J-A12003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LAURA KAYLA RODRIGUEZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAJION EDMONDS | : | |
| | : | |
| Appellant | : | No. 1294 MDA 2023 |

Appeal from the Order Entered August 17, 2023
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 2023-07271

BEFORE:   PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:      **FILED: AUGUST 5, 2024**

Sajion Edmonds appeals from the final Protection from Abuse ("PFA") order entered against him by the Luzerne County Court of Common Pleas ("trial court") in favor of Laura Kayla Rodriguez. Edmonds essentially argues (1) there was insufficient evidence for the trial court to issue the PFA order and (2) the trial court erred because the order bars him from contact with his and Rodriguez's child ("Child") and it was therefore not in Child's best interests. We affirm.

The relevant factual and procedural history is as follows. Rodriguez filed a PFA petition against Edmonds on July 14, 2023; the trial court issued a

_____

[*] Former Justice specially assigned to the Superior Court.

temporary PFA order the same day. The court held a full hearing on the petition on August 17, 2023.[1]

Rodgriguez testified at the hearing. She told the court that she shared custody of Child, who was five years old at the time of the hearing, with Edmonds. *See* N.T., 8/17/2023, at 3-4. She testified that, under the custody order that had been in effect until recently, she had primary custody of Child and Edmonds had partial custody. *See id.* at 5, 8. Rodriguez reported the custodial exchanges between her and Edmonds would take place at the Taylor Police Station. *See id.* at 5. According to Rodriguez, Edmonds would be "verbally abusive" to her, yelling different things at her in front of Child, during these exchanges. *See id.* at 5-6.

Rodriguez maintained Edmonds' verbal abuse made her fearful and she would "shake every time" she was around him. *Id.* at 6. She also revealed that Edmonds physically abused her when she was pregnant with Child and she feared he would do so again. *See id.* at 7. According to Rodriguez,

---

[1] Edmonds has failed to include the notes of testimony from the hearing in the certified record. We could dismiss his appeal on this basis alone. *See Commonwealth v. Midgley*, 289 A.3d 1111, 1120 (Pa. Super. 2023) (stating a claim is waived when the appellant has not met his burden of furnishing the Court with a certified record that contains the necessary documents to resolve the claim). However, the notes of testimony from the hearing are included in Edmonds' reproduced record provided to this Court. *See* R.R. 20a-43a. While the reproduced record certainly cannot serve as a substitute for the certified record, there is no challenge to the accuracy of the provided notes of testimony and they align with the trial court's representation of the testimony presented. As such, we will consider the merits of Edmonds' appeal.

Edmonds' yelling during the custody exchanges "scared [her] because [she] didn't know what [Edmonds was] capable of." *Id.* at 12. She also told the court she asked for law enforcement to be present during the custodial exchanges "pretty much every time" because she "was in fear." *Id.* at 8.

Rodriguez also testified that during the times she had custody of Child, Edmonds would call about five times a day and ask to have private conversations with Child. *See id.* at 9. She found these phone calls harassing, but she confirmed Edmonds was not threatening during these calls. *See id.* at 14, 16.

Edmonds testified as well. He denied ever yelling at or physically abusing Rodriguez or calling her home multiple times a day. *See id.* at 20-22, 24. He indicated his belief that Rodriguez filed the PFA petition in retaliation for his filing of a custody modification petition. *See id.* at 23.

Following the hearing, the trial court granted a no-hit PFA order for three years. The trial court specifically stated the order "does not include the child." *Id.* at 26. The trial court entered a PFA order directing Edmonds not to "abuse, harass, stalk, threaten, or attempt to use physical force" against Rodriguez. Again, the court stated that Rodriguez was the only protected party in the order. *See* Trial Court Opinion, 11/15/2023, at 1.

Edmonds filed a notice of appeal and the trial court ordered Edmonds to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Edmonds filed a statement, raising 18 alleged errors. In its responsive opinion, the trial

court found that, despite the voluminous number of alleged errors raised, Edmonds was essentially arguing that the court erred by barring him from having contact with Child and the evidence did not support the entry of the PFA order against him. The trial court found both issues to be without merit. As for Edmonds' claim that the PFA order barred him from contact with Child, the court stated the PFA order did not prevent contact with Child as the only protected party in the PFA order was Rodriguez. The court also found that there had been sufficient evidence to support the PFA order. It stated that it had found Rodriguez's testimony to be credible, and based on this testimony, she had proven by a preponderance of the evidence that she reasonably feared for her safety.

In his appeal to this Court, Edmonds raises six issues. However, his argument section is not divided "into as many parts as there are questions to be argued" nor does he "have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein," as required by Pa.R.A.P. 2119(a). Instead, he offers only a single argument under the generic heading "Argument for the Appellant." Appellant's Brief at 12 (unnecessary capitalization omitted). This clearly does not comply with our Rules of Appellate Procedure. Again, we could arguably find Edmonds' issues waived for this reason as well. However, like the trial court, we are able to discern the two general claims Edmonds presents in his argument section as to why the court erred by granting the PFA order, namely, that there was

- 4 -

insufficient evidence for the PFA order and the court failed to consider the best interests of Child.

When an appellant challenges the granting of a PFA petition, as Edmonds does here, we review the trial court's legal conclusions to see whether the trial court committed an error of law or abused its discretion. *See* ***K.B. v. Tinsley,*** 208 A.3d 123, 127 (Pa. Super. 2019). If the appellant's claim specifically alleges the evidence was not sufficient to support the PFA order, "we review the evidence in the light most favorable to the petitioner … [to] determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." ***Karch v. Karch***, 885 A.2d 535, 537 (Pa. Super. 2005) (citation omitted). We defer to the credibility determinations of the trial court. ***See id.***

The purpose of the Protection from Abuse Act ("PFAA") "is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal [being the prevention of abuse]." ***K.B.***, 208 A.3d at 127 (citation omitted). The PFAA defines "abuse," in relevant part, as the "occurrence of one or more of the following acts[:]"

> (2) Placing another in **reasonable fear of imminent serious bodily injury**[;]
>
> ***
>
> (5) **Knowingly engaging in a course of conduct or repeatedly committing acts** toward another person, including following the person, without proper authority, under circumstances which place the person in **reasonable fear of bodily injury**.

23 Pa.C.S.A. § 6102(a)(2), (a)(5) (emphases added).

"In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of bodily injury. The intent of the alleged abuser is of no moment." *K.B.*, 208 A.3d at 128 (citations and internal quotation marks omitted). Given the PFAA's goal of preventing abuse, a victim does not have to wait for physical or sexual abuse to occur for the Act to apply. *See id.*

In what we discern to be Edmonds' first claim, he asserts the evidence was insufficient to support the granting of the PFA order. He contends the only allegation against him was that he "sometimes raised his voice," and therefore, this does not rise to the level of abuse under the PFAA. Appellant's Brief at 16. Edmonds' claim that the only allegation against him was that he raised his voice is specious considering Rodriguez's testimony as outlined above; this testimony was specifically credited by the trial court. As the trial court pointed out, Rodriguez testified Edmonds was verbally abusive and had previously physically abused her, Edmonds' current behavior put her in fear, and Rodriguez had the police involved in the custodial exchanges because of her fear. The trial court found that Rodriguez had a reasonable fear for her safety and consequently the PFA order had properly been granted. We find no error in this conclusion.

Edmonds additionally argues there was no allegation that he ever seriously injured Rodriguez. Even accepting that as true, as noted above, a

victim is not required to wait for physical or sexual abuse to occur for the PFAA to apply. *See **K.B.***, 208 A.3d at 128.

In the second issue we discern from Edmonds' argument, Edmonds argues the court's PFA order failed to consider the best interests of Child because it "restrict[s him] from making arrangements for unsupervised custody of his natural child or for private telephone contact with [Child.]" Appellant's Brief at 19. As the trial court made clear, however, the PFA order only applied to Rodriguez, not Child, and did not address physical custody of Child. Edmonds' claim in this regard is therefore without merit.

We find that no relief is due.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/5/2024